IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMAL SHARIF (A-88447), | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 12-cv-05685 |
| v. | ) | |
| | ) | |
| IMHOTEP CARTER, M.D., RONALD | ) | Honorable Sara L. Ellis |
| SCHAEFER, M.D., ANTHONY | ) | |
| DUBRICK, M.D., ROYCE BROWN- | ) | |
| REED, LATONYA R. WILLIAMS, | ) | |
| KEVIN HALLORAN, MARCUS | ) | |
| HARDY, DARRYL EDWARDS, and | ) | |
| WEXFORD HEALTH SOURCES, | ) | |
| INC., a corporation, | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Plaintiff Jamal Sharif, an inmate at Stateville Correctional Center ("Stateville"), fractured

his right ankle while playing basketball on October 6, 2011.  Sharif filed this 42 U.S.C. § 1983

suit against Defendants Dr. Imhotep Carter, Dr. Ronald Schaefer, Dr. Anthony Dubrick, Ms.

Latonya Williams, Mr. Kevin Halloran, and Wexford Health Sources, Inc., ("Wexford")

(collectively, "Defendants")[1] alleging that Defendants exhibited deliberate indifference to his

serious medical needs in violation of the Eighth Amendment.  Before the Court is Defendants'

motion to dismiss [59] the Second Amended Complaint ("Complaint"), which is granted in part

and denied in part.

Sharif does not contest the dismissal of all claims against Williams and Dubrick.  The

Court dismisses all claims against Schaefer because Sharif fails to adequately state a claim

against him.  The claims against Carter and Halloran in their individual capacities and against

---

[1] Sharif also names Royce Brown-Reed, Marcus Hardy, and Darryl Edwards as defendants to this action.
Defendants Brown-Reed, Hardy, and Edwards did not join the motion to dismiss.

Wexford are sufficient to proceed through discovery. However, because the official capacity claims against Carter and Halloran are redundant to the claim against Wexford, the Court dismisses those claims against Carter and Halloran.

## Background[2]

On October 6, 2011, Sharif injured his right ankle playing basketball. His ankle, foot, and toes were visibly swollen and discolored. Prison personnel instructed Sharif to return to and remain in his cell unit until medical help arrived. Later that day, a prison official noticed Sharif's condition and escorted him to the Health Care Unit (the "HCU") emergency room. The nurses in the HCU provided Sharif with a crutch, bag of ice, and pass to return to the HCU on October 10, 2011 for examination. Sharif was not permitted to return to the HCU until October 11, 2011.

On October 11, Sharif sat in the HCU holding cage for 5–6 hours awaiting examination. At the end of the day, still awaiting examination, Sharif observed Defendants Williams and Carter, Stateville's nurse practitioner and Medical Director, exiting the facility. Before they left, Sharif explained to Williams and Carter that he was in pain and was waiting to see them about his injury. Williams and Carter told Sharif they were going home and would send another pass for the HCU. Sharif's ankle was x-rayed on October 12, 2011.

Sharif was first examined by a doctor on October 14, 2011—8 days after the injury. At that time, Dr. Schaefer diagnosed Sharif with an undisplaced lateral malleolus fracture—i.e. a broken right ankle. Rather than sending Sharif to an outside hospital, Schaefer misapplied an ortho-glass splint. Schaefer also ordered the use of crutches for seven weeks and follow up x-

---

[2] The facts in the background section are taken from Sharif's Second Amended Complaint, including any attached exhibits, and are presumed true for the purpose of resolving Defendants' motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011). The Court may consider documents attached to the complaint as part of the complaint. *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002); *see also* Fed. R. Civ. P. 10(c).

rays to be taken every two weeks. The follow up x-rays were never performed. Sharif was given 800 mg of ibuprofen for the pain. On October 21, 2011, Sharif filed a grievance against the HCU because his persistent pain caused him to lose sleep and because HCU personnel denied his request to visit an orthopedic specialist.

On October 24, 2011, Carter examined Sharif for the first time and discovered Schaefer had misapplied the splint. Carter reapplied the splint. HCU staff did not change Sharif's splint bandages and allowed the bandages to degrade while refusing requests for new bandages. Carter ordered follow up x-rays; however, those x-rays did not occur until January 12, 2012. Although Carter scheduled a December 2, 2011 splint removal, Carter removed the splint January 10, 2012.

When Carter removed the splint, he declared Sharif's ankle healed and ordered follow up x-rays. Ten days later, Williams examined Sharif and discovered that the fracture remained. Williams told Sharif that surgery was required to repair the fracture. On January 25, 2012, Carter confirmed Williams' diagnosis that Sharif's ankle never healed. Carter scheduled an orthopedic specialist appointment to make arrangements for surgery. When Carter re-examined Sharif on February 1, 2012, he was surprised to find Sharif had not seen the specialist. During that exam, Carter told Sharif he would schedule another specialist appointment.

On February 27, 2012, Carter informed Sharif that he had recently spoken to the specialist and Sharif had been rescheduled. Sharif did not see a specialist until April 2, 2012. The orthopedic specialist decided that Sharif did indeed require surgery. When Sharif visited the orthopedic specialist again on June 5, 2012, the specialist told Sharif, "They cancelled the surgery! They rescheduled the surgery two days ago." The surgery occurred on July 13, 2012—

nearly ten months after the injury. Sharif's right ankle became deformed as a result of the surgical delays.

Sharif filed several grievances against HCU personnel, claiming their errors caused him constant pain and led to delays in surgery. Sharif also wrote complaint letters to Halloran, the CEO of Wexford, and Dr. Dubrick, a doctor employed by Wexford. All of Sharif's complaints went unanswered.

## Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## Analysis

Sharif alleges that Defendants violated the Eighth Amendment, which protects against cruel and unusual punishment and has been interpreted to guarantee an inmate's right to adequate medical care. *See Estelle v. Gamble*, 429 U.S. 97, 103, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). Pursuant to 42 U.S.C. § 1983, "a prisoner may bring a suit against any person who caused a

violation of the prisoner's Eighth Amendment rights while acting under color of state law." *Berry v. Peterman*, 604 F.3d 435, 439 (7th Cir. 2010). "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional violation. *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) (citation omitted). Additionally, an official may be liable under the personal responsibility standard if he approved, facilitated, condoned or turned a blind eye to the offending conduct. *Arnett v. Webster*, 658 F.3d 742, 757 (7th Cir. 2011).

## I.      Deliberate Indifference Standard

Sharif contends that Defendants manifested deliberate indifference to his serious medical condition when their ineffective treatment delayed the healing of his broken ankle. To allege a *prima facie* case of deliberate indifference, Sharif must show: (1) that he suffered an objectively serious medical injury; and (2) that Defendants were deliberately indifferent to that injury, meaning Defendants were aware of the condition but refused to take reasonable measures to resolve it. *Arnett*, 658 F.3d at 750; *see also Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (holding that a prison official must be both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference").

A medical need is sufficiently serious if the "inmate's condition has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would perceive the need for a doctor's attention." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (citation omitted). To plead deliberate indifference, a plaintiff can allege "a treatment decision is so far afield of accepted professional standards as raise the inference that it was not actually based on medical judgment." *Arnett*, 658 F.3d at 750–51. Additionally, facts demonstrating a delay in treatment,

which results in prolonged and unnecessary pain, may also give rise to an inference of deliberate indifference. *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) (holding that a delay in treating a non-life threatening but painful condition may constitute deliberate indifference if the delay exacerbates or prolongs the prisoner's pain).

Defendants do not dispute that Sharif's fractured right ankle constitutes a serious medical condition. However, Defendants contend Sharif failed to allege sufficient facts to demonstrate deliberate indifference to his medical needs.

## II.    Dr. Anthony Dubrick and Ms. Latonya Williams

In response to the motion to dismiss, Sharif does not contest the dismissal of Defendants Dubrick and Williams. The Court construes Sharif's request as a Rule 41(a) voluntary dismissal and dismisses without prejudice the claims against Dubrick and Williams. Fed. R. Civ. P. 41(a); *see McCall-Bey v. Franzen*, 777 F.2d 1178, 1184 (7th Cir. 1985).

## III.    Dr. Imhotep Carter

Sharif alleges Carter, as Stateville's Medical Director and Sharif's treating physician, denied and delayed Sharif's access to adequate care to repair his ankle, including delaying Sharif's surgery. Sharif contends that Carter knew about his ankle pain and knew the treatment provided was ineffective, but denied and delayed Sharif's surgery in order to "cut costs." Additionally, Sharif alleges Carter's willful inaction caused him to suffer from an untreated ankle fracture for nearly one year, which ultimately led to his foot deformity. Construing the facts in the light most favorable to Sharif as the Court must at this stage, the Court finds that the Complaint states a colorable deliberate indifference claim against Carter.

Carter acted as the Medical Director and as a physician at Stateville during 2011–2012. *Id.* ¶ 6. Carter first encountered Sharif on October 11, 2011, but refused to treat him that day

even though Sharif informed Carter he had been waiting 5–6 hours for an examination and suffered from intense ankle pain. *Id.* ¶ 17. Carter did not actually treat Sharif until more than two weeks later when Carter reapplied the defective splint. *Id.* ¶¶ 15–20. Carter's splinting technique did not heal Sharif's fracture. *Id.* ¶ 22. Sharif also alleges that Carter did not remove his splint until nearly one month after it should have been removed and knew about the long delay in his visit to the specialist and surgery scheduling delays. *Id.* ¶ 20. As a result, Sharif suffered significant pain, which he documented in several grievances against Carter and the HCU. *Id.* ¶¶ 19, 26, Ex. G, M, N, V. All of these grievances, except one, were copied to the HCU for reply and response. *Id.* Ex. G, M, V. Sharif asks the Court to infer that Carter, as medical director at Stateville, received each grievance copied to the HCU. *Id.* ¶ 6; Resp. p. 5–6. Sharif also alleges that Carter knew about Sharif's continuous pain through his various personal interactions with him during examinations and treatment. *Id.*

"Even a few days' delay in addressing a severely painful but readily treatable condition suffices to state a claim of deliberate indifference." *Smith v. Knox County Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012)); *see also Gaston v. Ghosh*, 428 Fed. App'x 629, 632 (7th Cir. 2012) (reversing dismissal of complaint of delayed treatment and undue pain); *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008) (claim for deliberate indifference in one and a half day delay in treatment for a broken nose survives summary judgment). Based on the foregoing, Sharif pleads sufficient facts to state a claim that Carter knew about Sharif's serious medical condition and his prolonged pain leading up to surgery, yet allowed the delay in surgery. *See Burns v. Fenoglio*, 525 Fed. App'x 512, 515 (7th Cir. 2013) (reversing dismissal of complaint alleging deliberate indifference on the part of defendant who personally examined inmate).

Carter argues that the delays in treatment resulted from negligence, which cannot support a claim of deliberate indifference. *See Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006); *see also Estelle*, 429 U.S. at 106. The Court must consider the "totality of an inmate's medical care" when evaluating whether that care amounts to deliberate indifference. *Reed v. McBride*, 178 F.3d 849, 855–56 (7th Cir. 1999). Even if some of Carter's individual treatment decisions can be characterized as negligent, Sharif pleads sufficient facts to allege Carter's course of conduct throughout Sharif's treatment manifests indifference. *Compare id.* at 855–56 (numerous examples of neglect or mistreatment throughout the course of treatment sufficient for deliberate indifference), *with Dunigan v. Winnebago County*, 165 F.3d 587, 591 (7th Cir. 1999) (an isolated incident of negligence throughout otherwise adequate treatment insufficient for deliberate indifference). As discussed above, Sharif alleges multiple instances in which Carter delayed his treatment and prolonged his pain including when Carter: turned Sharif away on October 11, 2011 after learning he had been waiting for medical treatment for 5–6 hours and was in pain; delayed removing Sharif's splint for one month; and failed to ensure surgery was scheduled in a timely manner. These multiple instances of alleged indifference to pain and suffering, taken together, sufficiently state a claim. [3]

Finally, Carter argues that Sharif has pled himself out of court by faulting three parties—Carter, the warden, and the prison administration—for the surgical scheduling delay when only one party could be responsible. "[A] party may plead itself out of court by pleading facts that establish an impenetrable defense to its claims." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008) (citation omitted). However, by faulting Carter for the surgical scheduling

---

[3] Carter also points to the multiple rounds of HCU treatment to dispute that he ignored Sharif's medical needs. Sharif is "not required to show that he was literally ignored." *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000). To the contrary, even if a physician provides some treatment, a deliberate indifference claim arises if the physician's delays in treatment caused the inmate unnecessary or prolonged pain. *Arnett*, 658 F.3d at 750–51, 753.

delays, Sharif merely pleads an alternative theory. *See Tamayo*, 526 F.3d at 1086–87 (holding a plaintiff does not establish an impenetrable defense to her claims by pleading additional facts that suggest an alternative theory of liability, even if it makes another theory less likely to succeed). Carter's position as Medical Director of Stateville and Sharif's allegations that Carter told Sharif he was handling scheduling with the orthopedic specialist support Sharif's claim that Carter possessed the authority to delay his surgery. Compl. ¶¶ 22–24. While further fact discovery may establish that Carter was not responsible for the delay, his administrative role in scheduling the surgery is not a question to be resolved at the motion to dismiss stage. Defendants' motion to dismiss the claim against Carter is denied.

## IV.    Dr. Ronald Schaefer

Wexford employed Schaefer as a physician at Stateville during 2011. Compl. ¶ 7. Schaefer was the first physician to examine and treat the ankle. *Id.* ¶ 18. Sharif alleges Schaefer improperly applied an ankle splint, then ordered x-rays at two week intervals. *Id.* The x-rays were never performed and the 800 mg of ibuprofen provided to Sharif failed to alleviate his pain. *Id.* ¶ 18, Ex. G. Additionally, Sharif alleges that Schaefer failed to timely remove the splint reapplied by Carter. *Id.* ¶ 20.

Sharif's claims against Schaefer fail to support a § 1983 claim. *See Arnett*, 658 F.3d at 750–51, 753. Evidence of negligence in diagnosis or treatment does not equate to a valid deliberate indifference claim. *See Estelle*, 429 U.S. at 106. Schaefer only interacted with Sharif once, on the initial visit, during which time Schaefer misapplied the splint. Sharif states Carter corrected Schaefer's error by reapplying the splint, which indicates that the medical community recognizes splinting as appropriate treatment for fractures. Therefore, Schaefer's decision to

apply the splint was not "so far afield of accepted professional standards" to rise to the level of deliberate indifference. *See Arnett*, 658 F.3d at 750–51.

Furthermore, Sharif's contention that Schaefer forgot to remove the reapplied splint does not support a claim of deliberate indifference. Sharif pleads no facts to indicate Schaefer participated in any delay that exacerbated or prolonged his pain, refused to remove the splint on December 2, 2011, or even knew that the splint was to be removed that day. At best, these allegations rise to the level of negligence. The claim against Schaefer is dismissed.

## V.     Mr. Kevin Halloran

Sharif sues Halloran, the CEO of Wexford, even though Halloran was not personally involved with Sharif's medical care. Sharif can successfully state a claim for deliberate indifference by alleging Halloran knew "about the conduct and facilitate[d] it, approve[d] it, condone[d] it, or turn[ed] a blind eye." *Arnett*, 658 F.3d at 757. Sharif allegedly wrote Halloran two complaint letters regarding his injury. Compl. ¶ 26, Ex. R. In the April 20, 2012 letter, Sharif describes his worsening and prolonged pain, his suspicion that Dr. Carter lied to him about his injury, and his frustration with Carter's inaction and delays in scheduling surgery. *Id.* Ex. R. Sharif also requests that surgery be performed without further delay. *Id.*

The Seventh Circuit has concluded that not every public official in receipt of letters alleging constitutional violations is liable for deliberate indifference under § 1983. *Burks v. Raesmisch*, 555 F.3d 592, 595 (7th Cir. 2009). As our sister court noted, Halloran is in a different position from "unrelated" public officials like the Governor, the Director of Prisons, or even the Warden. *Mims v. Wexford Health Sources*, No. 11 C 6049, 2012 WL 6187117, at *4 (N.D. Ill. Dec. 12, 2012). Distinguishing Halloran's role from the public officials referenced in *Burks*, several district courts have drawn the inference that as CEO of Wexford, Halloran could

have intervened or investigated allegations of unconstitutional conduct brought to his attention through complaint letters. *See, e.g.*, *Reliford v. Ghosh*, No. 10 C 3555, 2011 WL 3704747, at *4 (N.D. Ill. Aug. 19, 2011); *Thomas v. Ghosh*, No. 08 C 4644, 2009 WL 910183, at *5 (E.D. Ill. March 31, 2009).

Defendants argue that the Court should follow *Sharif v. Ghosh*, No. 12 C 2309, 2013 WL 228239 (N.D. Ill. Jan. 18, 2013). In *Sharif v. Ghosh*, the court found Sharif's complaint letters to Halloran merely indicated that the prison doctors possessed differing opinions about the best treatment. *Id.* at *5. Because Halloran was not a medical professional capable of choosing the best treatment, the court concluded Halloran did not refuse to take the reasonable steps in his power to resolve Sharif's condition. *Id.* at *5. In this case, Sharif's doctors only prescribed one method of treatment: surgery. Compl. Ex. R. Sharif asked Halloran to help secure the recommended treatment. The contents of the letters sufficiently raise the inference that Halloran knew about Sharif's serious medical condition and the delays, yet did not act. *See e.g.*, *Mims*, 2012 WL 6187117, at *4 (denying Halloran's motion to dismiss); *Young v. Wexford Health Sources*, No. 10 C 8220, 2012 WL 621358, at *7 (N.D. Ill. Feb. 14, 2012) (refusing to dismiss on defense that Halloran had no personal involvement in an inmate's medical treatment).

Halloran also argues that as Wexford's chief corporate officer, he was not involved in the day-to-day operations of Stateville's HCU or Sharif's medical treatment. Further factual development may establish that Halloran had no role in individual medical decisions or in perpetuating a policy of refused medical care. But the extent of Halloran's involvement remains a matter for summary judgment. The claim against Halloran in his individual capacity remains.

**VI.     Dr. Imhotep Carter and Mr. Kevin Halloran in their Official Capacities**

Sharif also brings suit against Carter and Halloran in their official capacities. "[A]n official capacity suit is another way of pleading an action against an entity of which the officer is an agent." *Sow v. Fortville Police Dep't*, 636 F.3d 293, 300 (7th Cir. 2011); *see also Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). When an individual is sued in his official capacity alongside a local government entity or municipality, the official capacity claim is redundant. *Jungels v. Pierce*, 825 F.2d 1127, 1129 (7th Cir. 1987). District courts routinely dismiss official capacity claims when paired with claims against a municipality, local government, or private corporations contracted to perform municipal services. *See, e.g.*, *Sharif v. Ghosh*, No. 12 C 2309, 2014 WL 1322820, at *3 (N.D. Ill. Apr. 1, 2014); *Brown v. Chicago Bd. of Educ.*, 973 F. Supp. 2d 870, 875 (N.D. Ill. Sep. 25, 2013).

Wexford, although a private corporation, may be treated like a municipality for the purposes of § 1983 claims. *Minix v. Canarecci*, 597 F.3d 824, 832 (7th Cir. 2010) (treating private contractors that provide medical services to prisoners like municipalities for § 1983 claims). Therefore, official capacity claims against Wexford employees amount to claims against Wexford itself. *Graham*, 473 U.S. at 165–66. Accordingly, by bringing claims against Carter and Halloran in their official capacities, while also suing Wexford, Sharif essentially sues Wexford three times over. *See Brown*, 973 F. Supp. 2d at 875. The Court grants Defendants' motion to dismiss these redundant claims.

## VII. Wexford Health Sources, Inc.

As discussed above, although a private corporation contracted by the Illinois Department of Corrections ("IDOC") to provide medical services to Stateville, Wexford may be subject to § 1983 liability. *Minix*, 597 F.3d at 832. To establish municipal liability, a plaintiff must show

that an official policy or governmental custom exists, which both causes and constitutes the "moving force" behind the deprivation of his constitutional rights. *Teesdale v. City of Chicago*, 690 F.3d 829, 833–34 (7th Cir. 2012). A plaintiff can show deprivation directly by alleging facts to show "(1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Palmer v. Marion County*, 327 F.3d 588, 594–95 (7th Cir. 2003).

Wexford incorrectly contends that a claim for deliberate indifference can only arise if the constitutional violation was the direct cause of Sharif's harm and resulted from an express policy or custom attributable to the company. A plaintiff is not required to identify an express policy; rather, he may succeed in stating a claim under *Monell* by asserting facts that identify a series of bad actions taken by the municipality from which the court can infer that an unconstitutional custom or practice exists. *Woodward v. Corr. Med. Servs.*, 368 F.3d 917, 927 (7th Cir. 2004). Sharif alleges that Wexford maintains a custom or policy of ignoring inmates' serious medical needs, refusing to refer inmates to specialists for consultations and treatment, and delaying surgery, all to serve the interest of "cost-cutting." Compl. ¶¶ 11, 38–39, 46. Sharif claims that this policy or practice is responsible for Wexford's failure to provide him timely access to treatment, including surgery, for his broken ankle. Sharif offers factual support from his own experience with Wexford, and supplements his claims with citation to findings about Wexford's medical delays and mistreatment of prisoners from a 2011 outside association prison monitoring report. This is sufficient to infer that an alleged policy of "cost-cutting" exists, leading to delays in medical treatment, understaffing, and improper treatment of inmate medical conditions—all

factors that Sharif alleges directly contributed to his harm. *See Young*, 2012 WL 621358, at *6–7 (denying Wexford's motion to dismiss where plaintiff alleged Wexford's cost-cutting policy was responsible for his inadequate treatment); *McDonald v. Wexford Health Sources*, No. 09 C 4196, 2010 WL 3034529, at *3 (N.D. Ill. July 30, 2010) (same).

Wexford also states that the "cost-cutting" rationale fails to allege a concrete policy of unconstitutional behavior. *See Olive v. Wexford Corp.*, 494 Fed. App'x 671, 672–74 (7th Cir. 2012) (holding generic allegations about unconstitutional policies are inadequate to state a claim of deliberate indifference under *Monell*). In *Olive*, the deliberate indifference claim against Wexford asserting only a "bi-coastal policy and practice . . . of denying prison inmates adequate medical care." *Id.* at 673. In this case, however, Sharif has alleged with specificity that Wexford has a custom or policy of ignoring inmates' serious medical needs by failing to refer to specialists or schedule expensive treatments. Courts in this district have found allegations of similar "cost-cutting" policies sufficient to state a claim for deliberate indifference. *See, e.g.*, *Young*, 2012 WL 621358, at *6–7; *McDonald*, 2010 WL 3034529, at *3.

Finally, Wexford argues that Sharif ultimately received specialist treatment, thereby undermining the claim that Wexford had a policy of denying such consultations. Sharif's allegations are broader than the failure to refer—he also alleges delayed access to surgery and other necessary medical treatment. As discussed above, even though a plaintiff receives some treatment, he still may have a claim for deliberate indifference due to delay. Viewing in the light most favorable to him, Sharif's complaint alleges sufficient facts to defeat dismissal of this claim. *See Neely v. Randle*, No. 12 C 2231, 2013 WL 3321451, at *6 (N.D. Ill. June 26, 2013) (allegations of routine delays, denials, and non-responsiveness to requests for medical care sufficiently stated *Monell* claims against Wexford); *Ford v. Wexford*, No. 12 C 4558, 2013 WL

414494, at *9 (N.D. Ill. Feb. 7, 2013) (finding allegations of delayed delivery of medical permits, failure to administer medication, and delayed scheduling of appointments sufficiently stated a *Monell* claim). Defendants' motion to dismiss the claim against Wexford is denied.

**Conclusion**

For the foregoing reasons, Defendants' motion to dismiss is granted in part and denied in part. The claims against Williams and Dubrick are dismissed without prejudice. The claim against Schaefer is dismissed with prejudice. The claims against Carter and Halloran in their official capacities are dismissed with prejudice. Defendants' motion to dismiss the claims against Carter and Halloran in their individual capacities and against Wexford is denied. Carter, Halloran, and Wexford are given until October 10, 2014 to answer the Second Amended Complaint.

Dated: September 26, 2014

SARA L. ELLIS
United States District Judge